# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| A.W., | : | |
| | : | **Case No. 2:21-cv-04934** |
| **Plaintiff,** | : | |
| | : | **Chief Judge Algenon L. Marbley** |
| **v.** | : | |
| | : | **Magistrate Judge Elizabeth P. Deavers** |
| **RED ROOF INNS, INC.,** | : | |
| *et al.*, | : | |
| | : | |
| **Defendants.** | : | |

## OPINION & ORDER

This matter is before this Court on Defendant's, Best Western International, Inc. (hereinafter "BWI"), Motion to Dismiss. (ECF No. 45). For the following reasons, the Motion to Dismiss is hereby **DENIED**.

## I.  BACKGROUND

In Plaintiff A.W.'s First Amended Complaint ("FAC"), she alleges she was held captive by means of "violence, threats, and induced dependence on illegal substances" beginning at fourteen years old from 1999 to 2019. (ECF No. 31 at ¶ 34–35).  She alleges that a portion of this trafficking took place at, among other hotels, a Best Western by BWI in Columbus at 888 Dublin Granville Road, Columbus, OH 43229 from 2009–2016. (*Id.*, ¶ 40). Plaintiff now seeks to hold Defendant BWI liable under the civil liability beneficiary theory of the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1595(a). (*Id.*, ¶ 116). Plaintiff alleges that Defendant knew or should have known A.W. was trafficked on its properties and it had a statutory obligation not to benefit financially from the venture. (*Id.*, ¶¶ 50, 65–72, 117–18). As a result, A.W. argues that she suffered "substantial physical and psychological injuries." (*Id.*, ¶ 119).

A.W. argues that Defendant "hewed to a common policy of actively ignoring signs of ongoing human trafficking" and lacked a policy "requiring employees to report suspected instances of human trafficking to anyone." (*Id.*, ¶¶ 51, 84). Plaintiff alleges hotel staff would have recognized signs of her trafficking: visiting the same hotels repeatedly at intervals; visible bruising and extreme weight loss; cash payment for rooms; excessive requests for towels and linens; requesting that hotel staff leave cleaning supplies outside A.W.'s room so A.W. would not be disturbed; unusual numbers of used condoms and bottles of lubricant left behind; obvious signs of illegal drug use; and public altercations. (*Id.* at ¶¶ 46–47). A.W. alleges that in September 2014, the Columbus Best Western where she was trafficked was declared a "public nuisance" for being a "haven for prostitution." (*Id.*, ¶ 72). Further, an online review of the same location posted in July 2015 described the hotel saying, "[y]uck . . . watch out for the . . . drug dealers and/or pimps in the parking lot, foyer, and hallways!!!" (*Id.*). As a direct and proximate result of Defendants' refusal to prevent human trafficking on these properties, Plaintiff argues she was exploited repeatedly and victimized. (*Id.*, ¶ 52). Plaintiff seeks compensatory and punitive damages. (*Id.* at 32).

A.W.'s Complaint initially brought a conspiracy claim against all Defendants. (*Id.*, ¶¶ 121-22). Red Roof Inns, Inc. (hereinafter "Red Roof") and G6 Hospitality, LLC (hereinafter "G6") are also defendants in this matter but have not filed motions to dismiss. Plaintiff and Defendant BWI stipulated to dismissal of Count II, the conspiracy claim (ECF No. 64), in April 2022, however, and this Court granted an order dismissing the claim. (ECF No. 66). Plaintiff maintains the conspiracy claim, against Defendants Red Roof and G6. Therefore, the TVPRA claim is the only remaining allegation at issue with Defendant BWI in this Motion to Dismiss.

## II. STANDARD OF REVIEW

This Court may dismiss a cause of action under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted." Such a motion "is a test of the plaintiff's cause of action as stated in the complaint, not a challenge to the plaintiff's factual allegations." *Golden v. City of Columbus*, 404 F. 3d 950, 958–59 (6th Cir. 2005). This Court must construe the complaint in the light most favorable to the non-moving party. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F. 3d 430, 434 (6th Cir. 2008). If more than one inference may be drawn from an allegation, this Court must resolve the conflict in favor of the plaintiff. *Mayer v. Mylod*, 988 F. 2d 635, 638 (6th Cir. 1993). This Court cannot dismiss a complaint for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id*.

This Court is not required to accept as true mere legal conclusions unsupported by fact. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although liberal, Rule 12(b)(6) requires more than bare assertions of legal conclusions. *Allard v. Weitzman*, 991 F.2d 1236, 1240 (6th Cir. 1993) (citation omitted). Generally, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint's factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A claim is plausible when it contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The Complaint should be read as a whole, even if a specific alleged fact read in isolation appears meaningless. *Ricchio v. McLean*, 853 F.3d 553, 557 (1st Cir. 2017).

### III. ANALYSIS

### A.  Preliminary Matters

*1.  Outside Documents Introduced by Defendant BWI*

Defendant first argues it is an improper party to this action because it is not a parent company for BWI-branded hotels, which are independently owned and operated. (ECF No. 45 at 9). BWI asks this Court to take judicial notice of publicly available documents demonstrating another entity's ownership of the Columbus Best Western property and submits a copy of its franchise Membership Agreement with that hotel. (ECF Nos. 40 at 9–10; 45-1–45-3). Because Plaintiff alleges that Defendant operates the branded hotel under a franchise agreement and maintains significant control over this location (ECF No. 1, ¶¶ 54–64), Defendant BWI argues that this Court can "consider documents that [it] attaches to a motion if the documents are referred to in the [FAC] and are central to [the Plaintiff's] claims without converting the motion to one for summary judgment." (ECF No. 45 at 10 (citing *McLaughlin v. CNX Gas Co., LLC*, 639 Fed. Appx. 296, 298 (6th Cir. 2012); and *Weiner v. Klais & Co.*, 108 F.3d 86, 90 (6th Cir. 1997) (finding it was appropriate for defendants to attach ERISA plan documents to a motion to dismiss, where Plaintiff's claims were based on rights under the plan "which were controlled by the plans' provisions as described in the plan documents.")).

Plaintiff responds that "whether or not Best Western owns the physical property that Plaintiff was trafficked has no bearing on whether it is liable for a TVPRA beneficiary claim." (ECF No. 55 at 7). Second, Plaintiff argues that BWI improperly relies on outside documents, which are better suited for the summary judgment stage after discovery occurs. (*Id.* at 8). Plaintiff contends that the documents submitted with BWI's Motion to Dismiss are "cherry-picked" and do

nothing to advance Defendant Best Western's argument, but instead serve as an implicit acknowledgement that Plaintiff "has properly pleaded an agency theory of liability." (*Id.*).

Indeed, "it is elementary that the Court does not (and cannot) consider matters outside the four corners of the complaint when considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6)." *Allen v. Andersen Windows, Inc.*, 913 F. Supp. 2d 490, 499 (S.D. Ohio 2012). There is an exception to this rule, however, which allows the court to also "consider documents that a defendant attaches to a motion to dismiss if the document are referred to in the complaint and are central to the plaintiff's claim." *Id.* (citing *Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997)). A court may also consider public records and any other matters of which the court may take judicial notice under Rule 201(b) of the Federal Rules of Evidence.[1] *Jackson v. City of Columbus*, 194 F. 3d 737, 745 (6th Cir. 1999).

Although Plaintiff's FAC only makes two references to the relevant "franchise agreement[s]", her underlying claim is that Defendants maintain control over the operations, branding, and employment-related decisions of the local hotels and profit from the hotels' revenue through a "web of franchise agreements." (ECF No. 31, ¶¶ 57, 125). This link is essential to her

---

[1] **Fed. R. Evid. 201:**
**(a) Scope.** This rule governs judicial notice of an adjudicative fact only, not a legislative fact.
**(b) Kinds of Facts That May Be Judicially Noticed.** The court may judicially notice a fact that is not subject to reasonable dispute because it:
    **(1)** is generally known within the trial court's territorial jurisdiction; or
    **(2)** can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.
**(c) Taking Notice.** The court:
    **(1)** may take judicial notice on its own; or
    **(2)** must take judicial notice if a party requests it and the court is supplied with the necessary information.
**(d) Timing.** The court may take judicial notice at any stage of the proceeding.
**(e) Opportunity to Be Heard.** On timely request, a party is entitled to be heard on the propriety of taking judicial notice and the nature of the fact to be noticed. If the court takes judicial notice before notifying a party, the party, on request, is still entitled to be heard.

claim that Defendants are liable under the TVPRA. (*Id.*, ¶¶ 117–18). Therefore, Defendant BWI has introduced properly the Membership Agreement at this stage of the litigation.

BWI also introduced documents demonstrating property ownership and mortgage responsibility for its Columbus property, which are publicly available on the Franklin County Treasurer's and County Recorder's websites. (ECF Nos. 45-1; 45-2). Defendant is correct that public records maintained by a county Treasurer's or Recorder's office are the types of records to which courts in this District have often afforded judicial notice. *See Morse v. Fifty West Brewing Co. LLC, et al.*, No. 1:21-cv-377, 2022 WL 974342, at *3 (S.D. Ohio Mar. 31, 2022) (concluding that public records maintained by secretaries of state are the types of records to which court can take judicial notice); Fed. R. Evid. 201(b)(2) (stating that courts can take judicial notice of facts that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned"). Ownership of the physical property on which the Columbus Best Western hotel sits and information regarding the party responsible for its mortgage, however, has no impact on the franchise agreement between Defendant BWI and its Columbus hotel. Even though Plaintiff states that on information and belief, Defendant BWI "owned, supervised, and/or operated" the Best Western, the crux of Plaintiff's argument is that Defendant BWI was involved in a commercial venture with the hotel and profited from said agreement. (ECF No. 31, ¶ 15). Whether Defendant actually owned the physical property on which the hotel sits does not fall within the four corners of the allegations in the Complaint and is improperly introduced at this stage.

Therefore, this Court finds that BWI's Membership Agreement (ECF No. 45-3) was properly introduced, but the property ownership and mortgage documents (ECF Nos. 45-1 and 45-2) are improperly introduced and this Court will not take judicial notice of them.

6

### 2. Defendant BWI's Improper Party Argument

As previously stated, Defendant BWI argues that it is an improper party to this action because it is not a parent company for BWI-branded hotels, which are independently owned and operated. (ECF No. 45 at 9). Defendant BWI's franchise agreement ("The Membership Agreement") states in relevant part:

> The relationship of Best Western to its members is one of an *independent contractor*. Neither party has the power to obligate or bind the other in any way. No relationship of partners, joint ventures or *agents is created* . . . BEST WESTERN HAS NO RESPONSIBILITY FOR THE USE, CONDITION OR OPERATION OF THE HOTEL OR THE SAFETY OF THE DESIGN OR ANY STRUCTURE OR PRODUCT. BEST WESTERN HAS NO CONTROL OVER OR RESPONSIBILITY FOR ANY DECISION AFFECTING THE EMPLOYMENT OR SUPERVISION OF ANY PERSON EMPLOYED IN CONNECTION WITH THE HOTEL.

(ECF No. 45-3 at 5) (emphasis added). Based on this language, Defendant BWI maintains that this Court should dismiss the FAC because "the contents of the agreement unequivocally establish BWI did not have control over employment or supervision of hotel employees and thus cannot be held vicariously liable for alleged trafficking at the hotel." (ECF No. 67 at 2). Plaintiff contends that BWI's improper party argument is inappropriate for this stage of the litigation as it would be "better suited at summary judgment once the records has been developed through discovery." (ECF No. 65 at 8).

While this Court can consider BWI's franchise Membership Agreement at the Motion to Dismiss stage, this Court disagrees with Defendant BWI's improper party argument and **DENIES** its request to dismiss this action on that basis. The purpose of a motion to dismiss is to test "the plaintiff's cause of action as stated in the complaint, not [to] challenge [] the plaintiff's factual allegations." *Golden*, 404 F.3d at 958–59. Plaintiff contends that Defendants promulgate policies,

procedures, and standards governing branding, operations, and employee training to which franchisees must adhere as part of their franchise agreements. (ECF No. 31, ¶¶ 54–63). Further, Plaintiff alleges that Defendants failed to implement training and policies that would help employees identify and combat instances of sex trafficking in their hotels. (*Id.*, ¶ 63). Finally, Plaintiff argues that franchisee locations pay about 10% of their gross revenue back to Defendants for the privilege of using the brand's name and standards. (*Id.*, ¶ 64). As discussed more fully below, these allegations are sufficient to state a cause of action under the TVPRA, and it would be improper for this Court to allow a challenge to the Plaintiff's factual allegations at this stage.[2]

### 3. Defendant BWI's Retroactivity Argument

Plaintiff asserts that Defendant BWI contends that the statute of limitations bars TVPRA claims for conduct prior to December 23, 2008. (ECF No. 65 at 8). Plaintiff is mistaken, however, because Defendant BWI never argued for dismissal of the FAC on statute of limitations grounds. (ECF No. 67 at 3). Defendant BWI responds by instead referencing an argument it raised in related litigation regarding the fact that the beneficiary theory under the TVPRA was added through a 2008 amendment and was not effective prior December 23, 2008. Even if Defendant BWI had

---

[2] Even if this Court were to consider the merits of BWI's argument, this theory does not address the heart of Plaintiff's allegations nor is it sufficient to challenge those allegations. In isolation, the language in Defendant's Membership Agreement appears to disavow any relationship between Defendant BWI and its franchisee other than a financial relationship between that of a principal and an independent contractor.

First, Defendant BWI advances this argument to demonstrate that it cannot be held vicariously liable for the actions of the local hotel's employees and the harm alleged by T.P. (ECF No. 67 at 2). Plaintiff's TVPRA claim, however, alleges direct liability (ECF No. 31), and therefore, the Membership Agreement cannot be used to challenge Plaintiff's claim. Second, using this document to counter a vicariously liability claim is improper. This document cannot be read in isolation because it does not provide this Court with sufficient information about Defendant BWI's financial and operational relationship with its franchisees. As Plaintiff asserts, analysis of the merits of Defendant BWI's improper party argument based on vicarious liability would be better suited for the summary judgment stage where this Court can consider the merits of Plaintiff's factual allegations based on more information provided by all parties through discovery.

raised the TVPRA retroactivity argument in the first place, it is inapplicable here. Plaintiff alleges that she was trafficked at the Best Western hotel in Columbus from approximately 2009 to 2016, all of which occurred after the beneficiary theory amendment to 18 U.S.C. § 1595(a) took effect.

## B. Direct Civil Liability Under the TVPRA § 1595

This Court has undertaken extensive analysis of the issue of civil liability of hotel defendants in sex trafficking cases under the TVPRA in four cases with many factual similarities to this one. *See M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959 (S.D. Ohio 2019); *H.H. v. G6 Hospitality, LLC*, No. 2:19-cv-755, 2019 WL 6682152 (S.D. Ohio Dec. 6, 2019); *Doe S.W. v. Lorain-Elyria Motel, Inc.*, No. 2:10-cv-1194, 2020 WL 1244192 (S.D. Ohio Mar. 16, 2020); *A.C. v. Red Roof, Inc.*, No. 2:19-cv-4965, 2020 WL 3256261 (S.D. Ohio Jun. 16, 2020). Like the Plaintiffs in the other related cases, T.P. has sued under the TVPRA.

The TVPRA has two provisions relevant to this case. First, the TVPRA provides for criminal penalties set forth in 18 U.S.C. § 1591:

(a) Whoever knowingly—

(1) in or affecting interstate or foreign commerce, . . . recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person; or

(2) benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1),

knowing, or, except where the act constituting the violation of paragraph (1) is advertising, in reckless disregard of the fact, that means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b).

18 U.S.C. § 1591(a). Secondly, and central to Plaintiff's claim, is the standard for civil liability under the TVPRA set forth in 18 U.S.C. § 1595:

> An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees.

18 U.S.C. § 1595(a).

This Court held in *M.A.* and *H.H.* that § 1595(a) can be a standalone claim, and civil Defendants need not have committed the underlying criminal sex trafficking offense under § 1591. *M.A.*, 425 F. Supp. 3d at 964; *H.H.*, 2019 WL 6682152 at *2 (citing Cong. Research Serv., R40190, The William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 (P.L. 110-457): Criminal Law Provisions, at 16 (Jan. 29, 2009) (the amendments to the TVPRA "create[ ] civil liability both for those who face criminal liability for their profiteering and those who do not.")); *Plaintiff A v. Schair*, No. 2:11-cv-00145-WCO, 2014 WL 12495639, at *3 (N.D. Ga. Sept. 9, 2014) (the 2008 amendments broadened the parties who could be sued for trafficking violations from only the perpetrator)). This Court likewise finds that A.W.'s allegation that she is a victim of trafficking under § 1591 is enough to plead sufficiently that she is "a victim of this chapter" pursuant to § 1595(a) in order to survive a motion to dismiss. (ECF No. 31, ¶ 11).

This Court analyzes Plaintiff's direct civil liability claim under the "beneficiary theory" of § 1595(a). It is stated as follows: (1) the person or entity must "knowingly benefit[], financially or by receiving anything of value"; (2) from participating in a venture; (3) that the "person knew or should have known has engaged in an act in violation of this chapter." § 1595(a). A plaintiff may satisfy these elements by showing that "defendant's own acts, omissions, and state of mind

establish each element." *J.L. v. Best W. Int'l, Inc.*, 521 F. Supp. 3d 1048, 1060 (D. Colo. 2021). This Court will assess these factors in a different order than provided in the statute to allow for a more logical progression of legal analysis.

### 1. Knowing benefit

This Court begins with an analysis of whether A.W. has sufficiently alleged that Defendants "knowingly benefited" financially from her trafficker's sex trafficking venture. The first element merely requires that defendants knowingly receive a financial benefit, not that the perpetrator have actual knowledge of the sex trafficking venture. *A.C.*, 2020 WL 3256261, at *4. As this Court found in *M.A.* and *H.H.*, "the rental of a room constitutes a financial benefit from a relationship with the trafficker sufficient to meet this element of the § 1595(a) standard." *M.A.*, 425 F. Supp. 3d at 965; *H.H.*, 2019 WL 6682152 at *2. *See also J.L.*, 521 F. Supp. 3d at 1061 (concluding that allegations that a hotel defendant received a percentage of room revenue where trafficking occurred, was sufficient to meet the knowingly benefited element under 18 U.S.C. § 1595(a)); *Gilbert v. U.S. Olympic Comm.*, 423 F. Supp. 3d 1112, 1137 (D. Colo. 2019) (finding the forced labor provision of § 1589(b) does not "require[ ] the party to benefit from the [forced] labor or services for liability to attach"). A.W. alleges that Defendants rented rooms to her traffickers and benefited financially. (ECF No. 31, ¶ 118). Therefore, Plaintiff pleads allegations sufficient to meet this element of the § 1595(a) standard.

### 2. Knew or should have known the venture was engaged in trafficking

A defendant cannot be liable under 18 U.S.C. § 1595(a) unless it "knew or should have known" that the venture was engaged in sex trafficking. Defendants need not have actual knowledge of trafficking crimes for liability to attach, as the language of § 1595(a) demonstrates

that constructive knowledge is sufficient. *M.A.*, 425 F. Supp. 3d at 970 (citing *Jean-Charles v. Perlitz*, 937 F. Supp. 2d 276, 288–89 (D. Conn. 2013)). This Court has previously held that notice of "the prevalence of sex trafficking generally at their hotels," the failure "to take adequate steps to train staff in order to prevent its occurrence," and signs that "should have alerted staff to [Plaintiff's] situation" are sufficient to meet the constructive knowledge requirement. *M.A.*, 425 F. Supp. 3d at 968.

Defendant BWI maintains that Plaintiff only alleges that Defendants had a general awareness that trafficking occurred in hotels in the United States, not that A.W. was trafficked at the Columbus Best Western hotel at issue here. (ECF No. 45 at 13–14) (citing *Lundstrom v. Choice Hotels Int'l, Inc.*, No. 21-cv-00619, 2021 WL 5579117, at *8 (D. Colo. Nov. 30, 2021) (finding that "[g]eneral knowledge of commercial sex activity occurring at hotels across the United States, or even defendant's properties, is insufficient on its own to demonstrate that a franchisor participated in the trafficking of plaintiff.")). Defendant BWI argues that Plaintiff makes no "specific allegations . . . suggesting [hotel] staff . . . would have been alerted to her alleged trafficking or that staff would have alerted BWI." (ECF No. 67 at 5). Because the FAC lacks "a factual predicate to allege actual or constructive notice of Plaintiff's alleged trafficking," Defendant maintains Plaintiff cannot assert a theory of beneficiary liability under the TVPRA. (ECF No. 45 at 14).

As laid out in several of this Court's previous decisions, this Court is guided by two cases that represent opposite ends of the spectrum of the "knew or should have known" prong of the TVPRA. In *Ricchio v. McLean*, the plaintiff's allegations contained fairly strong evidence that the hotel owner and the trafficker were working together, and that the hotel owner intended to profit

from the trafficking scheme. The allegations included a "high-five" while discussing "getting this thing going again," a past business relationship between the trafficker and hotel owner, and allegations that one of the hotel owners had gone to the victim's room and "had shown indifference to Ricchio's obvious physical deterioration." *Ricchio v. McLean*, 853 F. 3d 553, 555 (1st Cir. 2017). Ricchio alleged that while "in plain daylight view of the front office of the motel," her trafficker "kick[ed] her and force[d] her back toward the rented quarters when she had tried to escape." *Id.* The Court concluded that the defendants "acted, at least, in reckless disregard" of the nature of the venture for purposes of § 1589 and § 1595. *Id.* at 557.

On the other end of the spectrum is *Hillary Lawson v. Howard Rubin*, where plaintiffs sued Blue Icarus, the owner of a condo that it leased to Howard Rubin who was procuring women then sexually assaulting and abusing them at that location. No. 1:17-cv-6404 (BMC), 2018 WL 2012869, at *2 (E.D.N.Y. Apr. 29, 2018). The court found the plaintiff's allegations of one police visit after a fight ensued and one ambulance sent to the residence in six years insufficient to hold Blue Icarus liable under § 1595. The Court reasoned that even if Blue Icarus would have done further investigation following the incidents, it would not have uncovered to any more information about the alleged trafficking. *Lawson*, 2018 WL 2012869, at **13–14.

A.W.'s allegations do not rise to the level of obviousness present in *Ricchio*. First, Plaintiff argues that there were a number of red flags apparent to hotel staff at both hotels including cash payments for rooms, constant foot traffic by nonpaying, male guests to A.W.'s room, signs of physical abuse and weight loss, and excessive requests for new linens and towels. (ECF No. 31, ¶¶ 44–46). Specific to the Best Western hotel at issue here, A.W. alleges that it was found a public nuisance in 2014 and was described as "trending" towards a "haven for prostitution" by the

13

Columbus City Attorney. (*Id.*, ¶ 72). She also cites to a 2015 online review of the hotel stating, "[y]uck . . . watch out for the . . . drug dealers and/or pimps in the parking lot, foyer, and hallways!!!" (*Id.*). She does not allege, however, the types of direct interactions alleged in *Richhio* between A.W.'s traffickers and the Best Western hotel staff during the times she was trafficked.

Plaintiff's allegations about the interactions between traffickers and owners, however, are not as sparse as those rejected by the court in *Lawson*. A.W. alleges that Defendant franchisors were on notice about the prevalence of sex trafficking at their hotels yet continued to rent rooms to traffickers, failed to take adequate steps to train staff in order to prevent its occurrence, and if they had implemented trafficking identification training, "would have known about Plaintiff's trafficking and would not have benefitted from it." (ECF Nos. 31, ¶¶50–51; 65 at 9–10). As such, Plaintiff argues that hotel Defendants' failure to act "incentivized their employees to ignore the obvious signs of human trafficking, and even rent rooms to known or suspected human traffickers, while they continued to profit from sex trafficking." (ECF No. 31, ¶ 52). As this Court has previously stated, general knowledge and failure to act constitute constructive knowledge and meet the plausibility standard required to state a claim for negligence under the TVPRA's beneficiary theory. *M.A.*, 425 F. Supp. 3d. at 968; *see also Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 758–79 (1998) (holding where a "supervisor's sexual harassment is outside the scope of employment because the conduct was for personal motives," an employer can still "be liable . . . where its own negligence is a cause of the harassment" because it "knew or should have known about the conduct and failed to stop it"); *Brown v. Corr. Corp. of Am.*, 603 F. Supp. 2d 73, 81 (D.D.C. Mar. 26, 2009) (finding that complaint stated sufficient allegations under § 1983, based on willful blindness, where defendants knew that a supervisor at a correctional facility raped his

employee, sexual harassment at the facility "was not an isolated incident," and defendants failed "to implement and effectuate the appropriate policies . . . to remedy and/or prevent the discriminatory conduct, sexual abuse and sexual harassment and rape"). Therefore, Plaintiff alleges sufficient facts to state a claim that Defendant had constructive knowledge of the trafficking occurring at its hotel under. 18 U.S.C. § 1595.

### 3. Participation in a venture

Finally, this Court must decide whether Plaintiff alleged sufficient facts to demonstrate Defendant's conduct constituted "participation in venture" under § 1595(a). A.W.'s traffickers had a sex trafficking venture. The question is whether the Defendant participated in a commercial venture related to A.W.'s trafficking by receiving "payment for rooms," "payments or kickbacks for internet usage," or by maintaining "the loyal customer base that fuels the supply and demand of sex trafficking." (ECF No. 31, ¶118).   Plaintiff asserts that Defendant "owns, supervises, and/or operates" the Best Western and therefore had a continuous business relationship with her traffickers who rented rooms there. (ECF No. 31, ¶ 15). Plaintiff maintains that Defendants: (1) provide the software through which the rooms are booked and paid for; (2) advertise for the hotel locations; and (3) and establish stringent standards for use of the brand. (ECF Nos. 31, ¶¶ 54–57).

BWI relies entirely on the Eleventh Circuit's recent decision in *Doe #1 v. Red Roof Inns, Inc.* to argue that Plaintiff did not meet the third prong of the beneficiary theory. (ECF No. 45, 11–13). In *Doe #1*, the Court held that "participation in a common venture" under 18 U.S.C. § 1595's beneficiary theory should be defined, based on its common definition as "an undertaking or enterprise involving risk and potential profit." 21 F. 4th at 724. In *Doe #1*, Plaintiffs alleged that defendant hotel franchisors participated in "sex trafficking ventures." *Id.* at 726. The Complaint

included allegations that: (1) defendants licensed their brand to franchisees who paid royalties to the defendants and other fees based on a percentage of their room revenue; (2) defendants received a percentage of the revenue generated from the rooms in which trafficking occurred; (3) defendants "owned, managed, supervised, operated, oversaw, controlled the operation of, and/or were inextricably connected to the renting of rooms" at these hotels; (4) defendant franchisors investigated incidents of trafficking at the individual hotels and controlled training related to spotting trafficking; and (5) read online reviews mentioning prostitution and crime occurring generally at the hotels where plaintiffs were trafficked. *Id.* While the court acknowledged that these allegations suggested that the franchisor defendants benefitted financially from renting rooms to traffickers, they did not rise to the level of showing that "the franchisors participated in a common undertaking involving risk or profit that violated the TVPRA." *Id.* at 726–27.

It should be noted that on appeal, Plaintiffs changed their theory and argued instead that "the franchisors participated in commercial ventures to operate hotels and that those hotel ventures violated the [TVPRA]." *Id.* at 727. Because Plaintiffs failed to raise this theory to the district court and because they repeatedly referred to "sex trafficking ventures" in their pleadings, the court declined to address Plaintiffs' new "commercial venture" theory. *Id.*

This Court has held that participation in a venture under § 1595 does not require actual knowledge of trafficking crimes but requires "at least a showing of a continuous business relationship between the trafficker and the hotels such that it would appear that the trafficker and the hotels have established a pattern of conduct or could be said to have a tacit agreement." *M.A.*, 425 F. Supp. 3d at 970 (citing *Jean-Charles*, 937 F. Supp. 2d at 288–89); *see also Ricchio*, 853 F.3d at 555 (finding sufficient allegations that, among other things, the trafficker and hotel owner

16

had prior dealings); *Doe S.W.*, 2020 WL 1244192, at *6–7 (finding allegations that defendant hotels repeatedly rented rooms to individuals they should have known were traffickers based on the totality of the circumstances, were sufficient to survive a Rule 12(b)(6) motion); *H.H.*, 2019 WL 6682152, at *4 (same); *A.C.*, 2020 WL 3256261, at *6 (same). Further, participation in a venture under the TVPRA does not require an "overt act." *See e.g., J.L.*, 521 F. Supp. 3d at 1062; *E.S. v. Best W. Int'l Inc.*, 510 F. Supp. 3d 420, 427 (N.D. Tex. 2021); *M.A.*, 425 F. Supp. 3d at 968–69; *S.J.*, 473 F. Supp. 3d at 153–54; *Doe S.W.*, 2020 WL 1244192, *6; *J.C. v. Choice Hotels Int'l, Inc.*, 2020 WL 3035794, at *1 n. 1 (N.D. Cal. June 5, 2020).

While this Court respects the Eleventh Circuit's decisions, it is not controlling here. Further, the Eleventh Circuit's decision does not apply to the facts at hand. The court distinguished the "sex trafficking ventures" at issue in *Doe #1* from the plaintiff's "commercial venture" argument raised on appeal and chose not to address the plaintiff's commercial venture theory in that case. *Id.* at 727. Here, Plaintiff alleges that Defendant was intimately involved in the daily operations, policies, and brand standards of the Best Western such that there existed a commercial venture between Defendant and Plaintiff's traffickers. (ECF Nos. 31, ¶¶ 54–64). This Court has previously held, a defendant meets the definition of participation in a venture where it financially benefits from renting rooms to individuals that they knew or should have known were engaged in trafficking. (ECF No. 65 at 11 (citing *M.A.*, 425 F. Supp. 3d. at 971)). To require Plaintiff to demonstrate that Defendant actually knew about A.W.'s specific trafficking in the Columbus Best Western, would defeat the purpose of the constructive knowledge prong of § 1595. Plaintiff sufficiently alleges that Defendant was engaged in a commercial business venture with A.W.'s traffickers because she states that Defendant receives a portion of the franchisee hotel's profits

from renting rooms to traffickers and were generally aware of trafficking in their hotels through a combination of online reviews, related ongoing litigation, and trafficking-related criminal activity. (ECF No. 31, ¶¶ 70–72). Defendant participated in this commercial venture with traffickers who carried out their own sex trafficking ventures from Defendant's hotel.

A claim is plausible when it contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Despite the parties' differing allegations about Defendant's operational role in the local hotels, it is not the role of this Court to resolve factual disputes at this stage of the litigation. *M. L. v. Craigslist Inc.*, No. C19-6153 BHS-TLF, 2020 WL 6434845, at *6 (W.D. Wash. Apr. 17, 2020), *report and recommendation adopted*, No. C19-6153 BHS-TLF, 2020 WL 5494903 (W.D. Wash. Sept. 11, 2020). Construing these allegations in favor of the Plaintiff, this Court finds that Plaintiff's allegations that Defendant substantially oversaw operations and promulgated policies for the Best Western hotel meets § 1595's definition of "participation in a venture.

Because Plaintiff's allegations meet the three-pronged requirements of 18 U.S.C. § 1595, Plaintiff has sufficiently stated a claim that Defendants are directly, civilly liable under the TVPRA. *See M.A.* 425 F. Supp. 3d at 971–72 (denying motion to dismiss of hotel parent company defendants where plaintiff pled that defendants controlled employee training, room pricing, provided online booking platform, and conducted inspections).

### C.  Joint and Several Liability

Plaintiff argues that all Defendants are jointly and severally liable for her damages under the TVPRA. (ECF No. 1, ¶ 30). Defendant does not appear to respond to this argument. Therefore, this Court will consider Defendant to have conceded this point.

18

### D. Vicarious Liability

A plaintiff can also satisfy the elements of § 1595's beneficiary theory by imputing "to the defendant the acts, omissions, and state of mind of an agent of the defendant" through indirect or vicarious liability. *J.L.*, 521 F. Supp. 3d at 1060; *A.B. v. Hilton Worldwide Holdings, Inc.*, 484 F. Supp. 3d 921, 935 (D. Ore. 2020); *B.M. v. Wyndham Hotels & Resorts, Inc.*, No. 20-cv-00656, 2020 WL 4368214, at \*6 – 7 (N.D. Cal. July 30, 2020). The TVPRA, however, does not address the issue of indirect or vicarious liability; therefore, federal district courts who have adjudicated this issue must apply common law to fill in the gaps. *Norfolk Redevelopment and Hous. Auth. v. Chesapeake and Potomac Tel. Co. of Va.*, 464 U.S. 30, 35–36 (1983) (explaining that the traditional rules of statutory construction advise that statutes are presumed not to disturb the common law "unless the language of the statute [is] clear and explicit for this purpose."); *see also In re Nicole Gas Prod., Ltd.*, 581 B.R. 843, 850 (B.A.P. 6th Cir. 2018), *aff'd sub nom. Nicole Gas Prod., Ltd.*, 916 F.3d 566 (6th Cir. 2019) (explaining that statutes are presumed to embrace the common law extant at their enactment).

In the past, this Court, and other district courts, have applied the state common law of vicarious liability when addressing indirect liability arguments under the TVPRA. *M.A.*, 425 F. Supp. 3d at 971 (applying Ohio agency law); *see also A.B.*, 455 F. Supp. 3d at 194–95 (applying Pennsylvania agency law); *S.J.*, 473 F. Supp. 3d at 158–59 (applying New York agency law). Since this Court's ruling in 2019, another district court chose to apply the federal common law of vicarious liability in a TVPRA case. *A.B.*, 484 F. Supp. 3d at 939–40 (citing Ninth Circuit cases where the court applied the federal common law of agency where the federal statute did not otherwise provide direction). Although it has yet to rule on whether the federal or state common

19

law of vicarious liability should be applied under the TVPRA, when analyzing the few cases in which federal statutes do not provide direction on vicarious liability arguments, the Sixth Circuit has applied the federal common law of vicarious liability. *See e.g., Marr v. Rife*, 503 F.2d 735 (6th Cir. 1974) (explaining that in determining the extent of liability of the owner of a real estate agency for violations of Fair Housing Act by his agent, court should apply federal law and should not be restricted by respondeat superior law or law of vicarious liability of the various states); *Imhoff Invest., L.L.C. v. Alfoccino, Inc.*, 792 F. 3d 627, 635 (6th Cir. 2015) (explaining that a seller may be held vicariously liable in an action alleging violation of the Telephone Consumer Protection Act ("TCPA") under federal common law principles of agency) *but cf. Pension Benefit Guar. Corp. v. Findlay Indus., Inc., et al.*, 902 F.3d 597, 611 (6th Cir. 2018) (deciding to apply state common law to an ERISA contract dispute regarding successor liability because a federal court may take direction from "the law of the state in which it sits" so long as the standard used "best comports with the interests served by ERISA's regulatory scheme," but explaining that "as a general matter, the court must look to the federal common law and should draw guidance from state common law only when federal common law does not provide an established standard").

As set forth more fully below, the defining characteristics of agency and joint employer status—the theories upon which Defendant raises its vicarious liability defense—are nearly identical under federal common law and Ohio common law. In *M.A.*, a similar, previous sex trafficking case alleging violations of the TVPRA, this Court applied the Ohio common law of vicarious liability. *M.A.*, 425 F. Supp. 3d. at 971–72. This decision stemmed from the fact that the limited references to the federal common law of vicarious liability drew directly from Ohio common law and Restatements. Even if the Sixth Circuit were to rule that federal common law

20

should be applied to vicarious liability arguments under the TVPRA, it would not change this Court's analysis because there is little to no substantive difference between federal and Ohio common law standards for agency and joint employer vicarious liability. Therefore, a review of the present matter under both federal and state common law results in the same outcome. Because the Sixth Circuit has not (nor has any other federal circuit) had the opportunity to address whether the federal common law or state common law of vicarious liability should be applied to the TVPRA, for thoroughness, this Court will analyze the current matter under both legal theories to determine whether Plaintiff meets the pleading standard for vicarious liability under the TVPRA.

It is unclear, however, to what extent Plaintiff raises a theory of vicarious liability in her Complaint. A.W. states "[u]nder federal regulations, the Hotel Defendants are each considered joint employers of the employees at their locations at which Plaintiff was trafficked." (ECF No. 1, ¶ 61). Plaintiff spends several paragraphs detailing Defendant's control over brand use, employment decisions, employee training, and hotel operations, but does not specifically reference an agency relationship between Defendant and the hotel franchisees. (*Id.*, ¶¶ 54–61). Defendant, however, raises defenses to both agency and joint employer theories of vicarious liability in its Motion to Dismiss (ECF No. 45 at 15–17), and in a conclusory fashion, Plaintiff states that she has "properly alleged a claim arising from agency and joint employer theories of liability" in her Response. (ECF No. 65). This Court will address the argument under both theories but reminds parties that it is "well established in the Sixth Circuit that a non-moving party cannot raise a new legal theory for the first time in response to an opposing party's motion to dismiss." *Barrow v. Westrock, Inc.*, 2021 WL 122985, at *1 (S.D. Ohio Jan. 13, 2021) (citing *Tucker v. Union of Needletrades, Indus., & Textile employees*, 407 F. 3d 784, 788 (6th Cir. 2005)).

As outlined more fully below, this Court finds that Plaintiff sufficiently pled vicarious liability under a **joint employer theory** and **DENIES** Defendant's Motion to Dismiss on that ground. It is the Plaintiff's responsibility, however, to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp.*, 550 U.S. at 555. Because it is unclear whether Plaintiff raised a claim for vicarious liability under the TVPRA using agency theory, this Court does not dismiss Defendant's Motion based on an agency theory of vicarious liability.

### 1. Agency and Vicarious Liability

To the extent the federal system, and more specifically the Sixth Circuit, have created a common law of agency liability, the courts generally turn to widely accepted definitions of agency in building the federal common law in this space. In *Burlington Industries, Inc. v. Ellerth*, the Supreme Court defined the central principle of agency law within the employment context: "[a] master is subject to liability for the torts of his servants committed while acting in the scope of their employment." 524 U.S. 742, 755–56 (1998) (quoting Restatement (Second) of Agency § 219(1)). The Court explained that "[a]n employer may be liable for both negligent and intentional torts committed by an employee within the scope of his or her employment," but in some circumstances, agency principles "impose liability on employers even where employees commit torts outside the scope of employment." *Id.* at 756, 758.

It is a long-standing principle of law in Ohio that "[a] principal is chargeable with the knowledge of, or notice to, his agent that is received by the agent in the due course of the agent's employment and is related to the matters within the agent's authority." *Liggett v. Chesapeake Energy Corp.*, 591 F. App'x 305, 309 (6th Cir. 2014) (citing *State ex rel. Nicodemus v. Indust. Comm'n*, 448 N. E. 2d 1360, 1362 (Ohio 1983)). In determining whether there is an agency

relationship, the question is how much the agent "retained control, or the right to control, the mode and manner of doing the work contracted for." *Beddia v. Goodin*, 957 F.2d 254, 257 (6th Cir. 1992) (quoting *Councell v. Douglas*, 126 N.E.2d 597, 599 (Ohio 1955)). Further, the right of control or control retained over the agent is directed "toward the attainment of an objective" which the principal seeks. *Gen. Acquisition, Inc. v. GenCorp Inc.*, 766 F. Supp. 1460, 1469 (S.D. Ohio 1990) (citing *Hanson v. Kynast*, 494 N.E.2d. 1091, 1094 (1986)). It is also well established that "[t]he principal's right of control need not extend to every aspect of the alleged principal and agent's association." *Id.*

Agency theories are also applicable to the franchisor/franchisee relationship. Under Ohio law, "a franchisor may be vicariously liable for a franchisee's tortious conduct under a theory of apparent agency." *Bricker*, 804 F. Supp.2d at 623. To determine whether "a principal-agent relationship exists, courts consider the same factors 'as in the absence of a franchisor-franchisee relationship.'" *Id.* (citing *Taylor v. Checkrite, Ltd.*, 627 F. Supp. 415, 416 (S.D. Ohio 1986)).

Defendant BWI asserts that where "a franchisor or brand does not have control of the subject premises . . . no agency relationship exists" and "the franchisor may not be held vicariously liable for civil claims." (ECF No. 45 at 15 (citing *Barrett-O'Neill v. Lalo, LLC*, No. 2:14-cv-194, 2014 WL 3895679, at *4 (S.D. Ohio Aug. 8, 2014)). BWI argues that the Complaint does not allege how BWI "exercises direct and immediate control over essential terms of the hotel locations of their employees." (*Id.*).

If Plaintiff had in fact pled an agency theory of vicarious liability under the TVPRA, Plaintiff sufficiently details what aspects of the individual hotel location BWI controls to meet the federal and state common law standards of agency: brand quality standards; use and placement of

franchisor's name; local hotel's reservation systems, brand loyalty programs, and websites; and employment policies and procedures. (ECF No. 31, ¶¶ 54–61). The fact that Defendant is in a franchise relationship with the respective, local hotel does not bar application of agency theory. This Court, construing the facts in favor of Plaintiff, finds that these allegations sufficiently establish that Defendant's control over the Best Western is directed towards attaining more revenue and commercial success, which is the objective Defendant, as principal, seeks. Therefore, if Plaintiff directly alleged vicarious liability through an agency theory, Plaintiff's allegations would have been sufficient to meet the pleading standards of Rule 8.

### 2.  *Joint Employer Status*

Plaintiff alleges that under federal labor regulations, Defendants "are considered joint employers of the employees at their locations at which Plaintiff was trafficked." (ECF No. 31, ¶ 61). Defendant BWI argues that a party is only a joint employer "if it exercises direct and immediate control over essential terms or conditions of another entity's employees." (ECF No. 45 at 16 (citing Joint Employer Status Under the National Labor Relations Act, 85 Fed. Reg. 11184, 11205 (Feb. 26, 2020)). BWI maintains that Plaintiff makes conclusory allegations and fails to allege how it exercises direct and immediate control over the hotel's location or employees. (*Id.*; ECF No. 67 at 5).

Most courts have recognized that the employer control theory and the agency theory are "essentially the same." *Satterfield v. Tennessee*, 295 F.3d 611, 618 n.6 (6th Cir. 2002); *see also Ries v. Ohio State Univ. Med. Ctr.*, 2013-Ohio-4545, ¶ 21, 137 Ohio St. 3d 151, 156, 998 N.E.2d 461, 466 (Ohio 2013) (explaining that when defining the scope of employment in a joint employment setting, the "concept generally denotes an agency relationship"). At the federal level,

whether two employers are a joint employer also turns on how much control one exercises over the other. *See e.g.*, *Int'l Longshoremen's Ass'n, AFL-CIO, Local Union No. 1937 v. Norfolk Southern Corp.*, 927 F.2d 900, 902 (6th Cir. 1991) (quoting *Metropolitan Detroit Bricklayers Dist. Council v. J.E. Hoetger & Co.*, 672 F.2d 580, 584 (6th Cir. 1982)) (articulating test for joint employer status under the NLRA as "the interrelation of operations between the companies, common management, centralized control of labor relations, and common ownership."); *Sanford v. Main Street Baptist Church Manor, Inc.*, 327 F. App'x 587, 594 (6th Cir. 2009) (quoting *United States EEOC v. Custom Companies,* Case Nos. 02 C 3768, 03 C 2293, 2007 WL 734395, at *5–8, (N.D. Ill. March 8, 2007)) (adopting the test  for Title VII joint employer status: "(1) the extent of the employer's control and supervision over the worker, including directions on scheduling and performance of work; (2) the kind of occupation and nature of skill required, including whether skills are obtained in the work place; (3) responsibility for the costs of operation, such as equipment, supplies, fees, licenses, workplace, and maintenance of operations; (4) method and form of payment and benefits; and (5) length of job commitment and/or expectations."). The Ohio courts similarly weigh the following factors when determining whether an entity has sufficient control over another to be considered a joint employer: "(1) interrelations of operation, (2) common management, (3) centralized control of labor relations, and (4) common ownership and financial control." *Wittenbrook v. Elecs. Recycling Servs., Inc.*, 2018-Ohio-208, ¶ 28, 104 N.E.3d 876, 882–83 (Ohio Ct. App. 7th 2018).

Plaintiff alleges on information and belief, that Defendant exercises "significant control over the employment decisions of [its] hotel locations," which includes promulgating "policies, procedures, and standards governing the hiring, training, retention, and advancement of on-the-

ground employees and setting their rates of pay." (ECF No. 31, ¶ 60). Relevant here, Plaintiff maintains that Defendant "promulgate[s] policies relating to training employees to recognize and respond to human trafficking, and the Hotel Defendants determine whether or not such training shall be mandatory." (*Id.*, ¶ 62). These pleadings allege that Defendant had significant control over hotel franchisee employees because it set the standards by which the hotel employees are expected to operate on a daily basis. These allegations meet the requirements to plead joint employment under both federal and Ohio state common law because they demonstrate the Defendant's oversight and control was intimately interwoven with the procedures governing daily hotel operations and employment policies. Therefore, A.W. has pled sufficient facts particular to BWI to meet Rule 8 notice requirements for purposes of surviving this Motion to Dismiss.

## IV. CONCLUSION

For the foregoing reasons, Defendant BWI's Motions to Dismiss (ECF No. 45) is hereby **DENIED**.

**IT IS SO ORDERED.**

_____
**ALGENON L. MARBLEY**
**CHIEF UNITED STATES DISTRICT JUDGE**

**DATE: December 16, 2022**